## Spears v. Commonwealth.

December 3, 1948.

Joe Hobson and B. M. James for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Latimer—Reversing.

Appellant, Betty Spears, was convicted of voluntary manslaughter. Her punishment was fixed at confinement in the penitentiary for five years.

She appeals, alleging: (1) that the trial court erred in overruling her motion for a directed verdict, and (2) that the instructions are erroneous.

To establish its case the Commonwealth introduced five witnesses. Luther Walters, a brother of the deceased, testified that he went to the Spears' home on the night of the shooting; that he saw his brother's body stretched out on the walk about 10 feet from the porch; that he did not see the shooting; and that his deceased brother had been making his home with defendant's mother, Ada Spears, about six months prior to his death.

Corrine Jackson testified that the deceased boarded with defendant and her mother; that he was not a dangerous or reckless man although he did get mad and leave on different occasions.

Curtis Elliott, who was in Ashland on the day of the shooting, undertook to testify about a statement made by Mrs. Ada Spears out of the presence of the defendant. This was excluded from consideration of the jury.

Robert Layne, brother-in-law of the deceased, stated that he saw deceased about 10 o'clock on the night of the shooting; that deceased was drinking "a right smart"; and that he took him to Boldman where he purchased a quart of wine and then to Cow Pen where he purchased eight bottles of beer.

John B. Porter testified that he saw the body of the deceased in the yard of the defendant's home; that the deceased was "bad" to drink; that he talked with the defendant about how the deceased met his death; and that she told him deceased was pursuing her with a bottle and was attempting to hit her with it.

The above was the substance of the evidence for the Commonwealth.

672

The defendant, testifying for herself, stated what transpired between them before she shot deceased. She testified, in substance, that on the afternoon of the shooting the deceased came home about 2 o'clock and that he had a quart of wine which he drank; that he was broke and wanted to get some money to buy more wine; that he asked her to go to Betsy Layne's and get $2.00 and two packages of cigarettes; that she got the cigarettes but could not get the money; that upon her return she gave him the cigarettes; that he started up the road saying he knew where he could get the money; that he returned in company with defendant's mother with a quart of wine; that he drank one-half of that quart, went to the wash house, took a bath, came back in the house and ate his supper, after which he drank the rest of the wine; that by that time he was pretty well drunk; that later defendant's mother went to get some milk and butter and the deceased left with her; that while they were gone the deceased obtained more wine and beer and returned home with it; that when he returned she was in bed about half asleep; that the deceased awakened her and asked if she didn't want a beer; that she replied she did not, whereupon, the deceased grabbed her arm and pulled her up and said: "You are going to drink a God-dammed beer"; that at about this time defendant called officers, which seemed to incense the deceased all the more; that defendant's mother was reprimanding the deceased for acting in such a way and asked him not to curse; that he then reached for a beer bottle and said to defendant's mother: "Shut your God-dammed mouth or I will crush your skull in," and hit defendant's mother; that she then said; "Keep your hands to yourself," whereupon deceased replied: "By God nobody is talking to you. You keep your mouth closed"; that defendant then walked out on the porch and into a bedroom and got a .22 rifle and shells; that when she returned to the porch deceased was standing in the door cursing her because she had called the officers; that when he saw defendant come on the porch with the gun in hand he shoved the screen door open and with a beer bottle in his hand, he said: "You come out here with that God-dammed gun on me and I will kill you, so help me God"; that defendant replied: "Nobody is going to shoot. I just want you to quiet down"; that this statement seem-

ed to make him madder than ever and he started at her with the bottle in hand; that she backed three or four steps; and that she told him to stop but instead he kept coming at her with the bottle, when she shot him.

She is corroborated substantially in the above by her mother.

Bert Layne and Dora Layne each testified that deceased had the reputation as being a violent man.

Appellant insists that the above evidence of the Commonwealth was insufficient to authorize the submission of the case to the jury.

Counsel for appellee takes the position that when appellant went out on the porch and on into her bedroom she was entirely safe, and that she would have been in no danger had she not returned to the porch and there renewed the difficulty with the deceased. It is insisted that appellant left the scene of the verbal battle and went into the bedroom, deliberately armed herself with a deadly weapon, and then came from this place of safety to a place of danger to renew the difficulty.

If the above position is correct we would necessarily have to overlook the fact that this difficulty occurred in the home of the appellant and her mother. It is true the deceased was a boarder in the home of defendant and her mother, but that fact did not presume appellant and her mother to have surrendered jurisdiction of their home or the right to defend and protect themselves therein. It would mean an overlooking of the further fact that when appellant went to her bedroom to procure the gun, the deceased was cursing and threatening and had just struck appellant's mother. No one could argue successfully that appellant must flee leaving her mother in danger at the hands of this incensed and drunken man.

Neither malice nor ulterior motive was established. On the other hand, the fact that deceased was a boarder in this home, coupled with the fact that only a few hours prior to the shooting, appellant obliged the deceased by going for his cigarettes and attempting to borrow money for him, indicates they were on friendly terms.

It is true that neither the court nor the jury is required to accept defendant's explanation in the absence

of eyewitnesses, but we cannot escape the fact that appellant here had telephoned officers to come; that her testimony concerning the deceased leaving home and purchasing wine and beer was corroborated by the testimony of deceased's brother-in-law; and taken as a whole the physical circumstances are corroborative of her testimony and are more consistent with her innocence than with her guilt.

In the case of Dixon v. Commonwealth, 290 Ky. 469, 161 S. W. 2d 913, 914, we said:

"If Dixon's testimony is true, we do not see how a stronger case of self-defense could have been proved. While neither the court nor the jury is required to accept defendant's explanation of the affray in the absence of eyewitnesses, nevertheless, if the physical circumstances in evidence are corroborative of his testimony and the circumstances proved are more consistent with his innocence than with his guilt, it was the duty of the court to instruct the jury to return a verdict of 'not guilty.' "

We conclude, therefore, that the court should have directed a verdict of acquittal.

Having thus concluded it becomes unnecessary to consider or discuss the question raised as to the instructions.

Wherefore, the judgment is reversed with directions for a new trial, wherein, should the evidence be substantially the same as herein, the court will direct the jury to return a verdict of not guilty.